Strafford
No. 80-492

# THE STATE OF NEW HAMPSHIRE

v.

## DENNIS C. GLIDDEN

January 20, 1982

44

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief and orally), for the State.

*Alfred Catalfo, Jr.*, of Dover, by brief and orally, for the defendant.

BOIS, J.   The defendant appeals from a jury verdict finding him guilty of manslaughter (RSA 630:2 (Supp. 1979)) and second-degree assault (RSA 631:2 (Supp. 1979)). He challenges the constitutionality of the statutory provisions regarding manslaughter (RSA 630:2 (Supp. 1979)) and recklessness (RSA 626:2 II(c)), as well as the propriety of several of the Trial Court's (*Souter*, J.) rulings, and the sufficiency of the evidence underlying the jury's verdict. We affirm his convictions.

The defendant spent the afternoon of April 1, 1980, in the Black Lantern bar in Farmington, New Hampshire, drinking beer with his friends. In the early evening, the defendant and several of his friends left the Black Lantern and went to another bar where they continued to drink. The defendant returned to the Black Lantern later that evening, and remained there until closing time.

Soon after the Black Lantern closed and its patrons departed, numerous fights broke out on an adjacent street. In one incident, an individual hit the defendant in the face and kicked him repeatedly. According to witnesses, the defendant subsequently became embroiled in a scuffle with James Shea and James McKone. This altercation ended abruptly when a gunshot was fired, killing Shea and wounding McKone. Several witnesses identified the defendant as the person holding the gun immediately after it discharged.

The defendant was indicted for second-degree murder in the

death of Shea, and for second-degree assault in the wounding of McKone. Following a trial, the jury convicted him of manslaughter and second-degree assault, and he appealed to this court.

We first address the defendant's challenges to the constitutionality of RSA 630:2 (Supp. 1979) and RSA 626:2 II(c).

RSA 630:2 (Supp. 1979), entitled "Manslaughter," provides that "[a] person is guilty of manslaughter when he causes the death of another . . . [r]ecklessly." The defendant claims that this statute is void for vagueness because the definition of "recklessly" is unclear. He argues that the lack of clarity arises from a conflict between the statutory definition of "recklessly" (provided in RSA 626:2 II(c)) and the provisions in RSA 626:4 regarding the significance of intoxication.

RSA 626:2 II(c) defines "recklessly" as follows:

"A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. . . . *A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication . . . also acts recklessly with respect thereto.*" (Emphasis added.)

RSA 626:4 states:

"Intoxication is not, as such, a defense. The defendant may, however, introduce evidence of intoxication *whenever it is relevant to negate an element of the offense charged,* and it shall be taken into consideration in determining whether such element has been proved beyond a reasonable doubt."

(Emphasis added.) The defendant contends that these statutes are inconsistent because the latter provisions establish the importance of intoxication evidence, while the former statute discounts the value of such evidence. He argues that this statutory scheme renders the definition of "recklessly" uncertain, by failing to set out clearly whether a person may act recklessly while voluntarily intoxicated.

██ A criminal statute must give a person of ordinary intelligence fair notice of the conduct which it proscribes. *State v. Taylor,* 121 N.H. 489, 493, 431 A.2d 775, 777 (1981); *Colautti v. Franklin,* 439 U.S. 379, 390 (1979). A criminal statute should also provide clear and ascertainable standards of criminal culpability;

it must discourage arbitrary and erratic convictions. *State v. Albers*, 113 N.H. 132, 133–34, 303 A.2d 197, 199 (1973); *Colautti v. Franklin*, 439 U.S. at 390.

■ Because the defendant's vagueness claim does not involve a fundamental right, a facial attack on the challenged statutory scheme is unwarranted. *State v. Taylor*, 121 N.H. at 493, 431 A.2d at 777; *State v. Nickerson*, 120 N.H. 821, 823–24, 424 A.2d 190, 192–93 (1980); *Rose v. Locke*, 423 U.S. 48, 50 n.3 (1975). We will examine the statutory scheme only as it applies to the facts of this case. *State v. Taylor*, 121 N.H. at 493–94, 431 A.2d at 777.

■ We find that RSA 626:2 II(c) and RSA 626:4 provided the defendant with fair notice. RSA 626:2 II(c) states that a person acts recklessly when he creates the requisite risk and is unaware of the risk "solely by reason of having voluntarily engaged in intoxication. . . ." Under RSA 626:4, a person *may* introduce evidence of intoxication for consideration by the jury *"whenever it is relevant* to negate an element of the offense charged. . . ." (Emphasis added.) The language of RSA 626:2 II(c), however, clearly indicates, and the court instructed the jury accordingly, that intoxication is not relevant to negate the element of recklessness. As a result, it should have been apparent to the defendant and to the jury that the provisions regarding the introduction and consideration of intoxication evidence did not apply to recklessness.

The defendant further challenges the specific provisions in RSA 626:2 II(c) which state that "[a] person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication . . . also acts recklessly with respect thereto." He argues that this language violates due process because it is vague and confusing, and because it fails to provide for consideration of any conditions, other than intoxication, which might have caused his lack of awareness.

■ We reject this argument. The above-mentioned provisions of RSA 626:2 II(c) establish two distinct requirements for recklessness: first, a person must create the specified risk; and second, the individual must be unaware of this risk solely because of voluntary intoxication. We find the quoted language plain and unambiguous. Furthermore, we are unfamiliar with any maxim of due process requiring a criminal statute to provide for consideration of particular conditions. Nonetheless, even if such a rule were to exist, we find that RSA 626:2 II(c) implicitly provides for consideration of conditions other than intoxication, because it permits a finding of recklessness only when an individual's lack of aware-

ness results *solely* from voluntary intoxication. In sum, we hold that the challenged statutory sections afforded the defendant fair warning of the consequences of his actions, and provided the jury with a clear standard for determining whether he acted recklessly.

We now turn to the defendant's claims regarding the alleged errors of the trial court.

At trial, the defendant testified that he had passed out immediately prior to the April 1 shooting, and that he could not remember the circumstances surrounding the incident. During cross-examination of the defendant, the prosecution repeated the testimony of several witnesses who had identified the defendant as a participant in the shooting. After repeating such witnesses' testimony, the prosecuting attorney asked the defendant whether he disputed the particular testimony. The court permitted this questioning despite the objections of defense counsel. On each occasion, the defendant responded that he could not remember the facts of the incident.

The defendant argues that the trial judge erred in allowing the prosecution to pursue this line of questioning. He claims that the questioning involved irrelevant subject matter, and that it was cumulative and argumentative.

■■■ The scope of cross-examination falls within the sound discretion of the trial court. *Kennedy v. Ricker*, 119 N.H. 827, 832, 409 A.2d 778, 781 (1979). Although we have never ruled on the propriety of the specific form of questioning at issue in this case, *but cf. State v. Grierson*, 96 N.H. 36, 39, 69 A.2d 851, 854 (1949), courts in other jurisdictions have permitted questioning which required a witness to state his belief as to the correctness of a prior witness' testimony. *E.g., People v. Morse*, 33 Ill. App. 3d 384, 391, 342 N.E.2d 307, 313 (1975), *cert. denied sub nom. Morse v. Illinois*, 426 U.S. 953 (1976); *State v. Watson*, 264 S.E.2d 628, 634 (W. Va. 1980). This form of questioning is justifiable because it encourages a witness to reconsider the accuracy of his own testimony, and provides a valid means for attacking the witness' credibility. *See State v. Atkins*, 261 S.E.2d 55, 64 (W. Va. 1979), *cert. denied sub nom. Atkins v. West Virginia*, 445 U.S. 904 (1980). In contrast, the courts have rejected questioning which required a witness to comment directly on the veracity, as opposed to the correctness, of another witness' testimony. *E.g., People v. Hill*, 58 Ill. App. 3d 822, 825–26, 374 N.E.2d 1020, 1023 (1978); *cf. State v. Grierson*, 96 N.H. at 39, 69 A.2d at 854.

■■ In the instant case, the prosecution in effect asked the defendant whether he agreed with the testimony of the other wit-

nesses; the defendant was not compelled to comment directly on the veracity of the other witnesses. The questioning brought the defendant's credibility into sharp focus, and the jury was entitled to evaluate his demeanor and the consistency of his answers. *See State v. Fogg*, 80 N.H. 533, 537, 119 A. 799, 801 (1923). We hold that the cross-examination was neither argumentative nor cumulative, and that the court did not err in permitting this form of questioning.

The defendant contends that the trial court improperly allowed certain references by the prosecution, in its closing argument, to the testimony of Mark Sessler, an earlier witness. He also claims that the trial court erred when it permitted the prosecution, in its closing argument, to state:

> "Although [the defendant] can't specifically remember, he wants you to believe that he was not near the wrestlers. . . . In addition . . . he wants you to believe that he didn't have a gun that evening."

The defendant argues that the disputed statements inaccurately represented the respective witnesses' testimony, and therefore constituted an improper discussion of facts not previously in evidence.

■■■ We require that counsel take contemporaneous objections and exceptions to preserve issues for our consideration. *State v. Fecteau*, 121 N.H. 1003, 1006, 437 A.2d 294, 296 (1981). While the record in this case reveals that defense counsel objected to the prosecution's summary of Mark Sessler's testimony, it is unclear as to the court's disposition of this objection. Nonetheless, the record clearly indicates that defense counsel failed to except to the specific portion of the State's closing argument regarding Sessler's testimony. As a result, the propriety of the State's characterization of Sessler's testimony is not an issue properly before us.

■■■ In contrast, defense counsel adequately preserved its claim regarding the State's characterization of the defendant's testimony, and this issue therefore warrants our consideration. Although the prosecution may not introduce new facts during its closing argument, it "may argue facts that can reasonably be inferred from the evidence presented. . . ." *State v. Carroll*, 120 N.H. 458, 460, 417 A.2d 8, 10 (1980); *see* 2 R. McNamara, New Hampshire Practice, Criminal Practice and Procedure § 805, at 23 (1980) [hereinafter cited as McNamara]. The defendant testified that he blacked out near a fire hydrant which was beyond the immediate vicinity of the shooting incident. He stated that, after regaining his consciousness, he did not know that a shooting had

occurred. Certainly, this testimony created a reasonable inference that he "wanted the jury to believe" that he was not near the location of the shooting. Similarly, the defendant's testimony that he did not carry a gun on the night of April 1, 1980, created a reasonable inference that he "wanted the jury to believe" that he did not have a gun on that evening. Thus, we hold that the trial court properly allowed the prosecutor's closing statements regarding the defendant's earlier testimony.

The defendant next argues that the trial court abused its discretion in refusing to instruct the jury, in accordance with his request, "that if the defendant was sufficiently intoxicated or had been struck in the head with a kick or a combination of both, then he would be . . . incapable of conduct of recklessness." We note, after reviewing the court's instructions in their entirety, that the trial judge clearly and accurately defined the elements of recklessness on several occasions. The court's charge adequately stated the statutory law, and the court therefore had no obligation to give the requested instruction. *See State v. Taylor*, 121 N.H. at 495–96, 431 A.2d at 779; 2 McNAMARA, *supra* § 816, at 33. The requested instruction, moreover, stated the law incorrectly because under the terms of RSA 626:2 II(c), a person suffering from a physical ailment or from intoxication might still possess the requisite mental state for recklessness. We find that the court did not err in denying the requested instruction.

Having dismissed the defendant's constitutional challenges, as well as his contentions with respect to the trial court's alleged errors, we address his final argument concerning the insufficiency of the evidence. The defendant specifically claims that the prosecution failed to prove beyond a reasonable doubt that he fired the gun which killed Shea, or that he acted recklessly. He also argues that the State never proved that McKone's injury resulted from the bullet fired from the defendant's gun.

In examining the sufficiency of evidence, we must determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Bird*, 122 N.H. 440 A.2d 441, 444 (1982); *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Throughout this inquiry, we will view the evidence "in the light most favorable to the prosecution." *State v. Bird*, 122 N.H. at 440 A.2d at 445.

At trial, several witnesses stated that they saw the defendant, or an individual resembling him, wrestling with McKone and Shea. Numerous witnesses testified that the defendant held a gun

in his hand immediately after the shooting. Furthermore, a criminologist identified the defendant's gun as the weapon used in the killing, and additional testimony revealed that the defendant told a friend after the shooting that "I think I shot someone." Certainly based on this evidence, any rational trier of fact would have found beyond a reasonable doubt that the defendant fired the gun which killed Shea.

The evidence indicated that only one shot was fired during the scuffle between the defendant, Shea, and McKone, and that the projectile passed through Shea's body as he lay on top of McKone. McKone testified that he was wounded immediately after hearing a "firecracker type sound." His pants, which were entered as an exhibit, had a hole in the knee. Furthermore, the evidence revealed that the police subsequently found a projectile adjacent to Shea's body. We hold that this evidence, in addition to the evidence mentioned above, entitled any rational trier of fact to find beyond a reasonable doubt that McKone's injury resulted from a bullet, fired from the defendant's gun, which passed through Shea's body and struck McKone in the knee.

Finally, we hold that sufficient evidence existed regarding the defendant's recklessness. As noted, the testimony revealed that the defendant consumed a large amount of beer prior to the incident, and that he held a loaded gun while fighting with two other individuals. This evidence entitled the jury to find either that the defendant was aware of and consciously disregarded the extreme risk of his conduct, *see State v. Jones*, 120 N.H. 652, 654, 421 A.2d 1004, 1005 (1980), or that he was unaware of the risk solely because of voluntary intoxication. In view of the evidence regarding the defendant's firing of the gun, and the evidence concerning his mental state, a rational trier of fact could have found beyond a reasonable doubt that the defendant acted recklessly.

*Exceptions overruled; affirmed.*

BATCHELDER, J., did not sit; the others concurred.