Strafford
No. 84-341

THE STATE OF NEW HAMPSHIRE

v.

DENNIS C. GLIDDEN

October 30, 1985

*Stephen E. Merrill*, attorney general (*Peter W. Mosseau*, deputy attorney general, on the brief, and *T. David Plourde*, assistant attorney general, orally), for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The issue in this case is whether the Trial Court (*Nadeau*, J.) erred in refusing to grant the defendant's motion for a new trial, on the ground of ineffective assistance of counsel, filed three years after his convictions. We find no error on the part of the trial court, and therefore we affirm.

The defendant was indicted in June, 1980, on charges of second degree murder, RSA 630:1-b, and second degree assault, RSA 631:2 (Supp. 1979), as a result of an April 1, 1980, incident which occurred outside the Black Lantern Bar in Farmington, New Hampshire. After his arrest, the defendant retained private counsel, who represented him throughout the trial and the subsequent appeal. He was convicted in November, 1980, of manslaughter, RSA 630:2 (Supp. 1979), and second degree assault, and the convictions were upheld by this court. *State v. Glidden*, 122 N.H. 41, 441 A.2d 728 (1982). The facts as stated in that opinion are as follows:

"The defendant spent the afternoon of April 1, 1980, in the Black Lantern Bar in Farmington, New Hampshire, drinking beer with his friends. In the early evening, the defendant and several of his friends left the Black Lantern and went to another bar where they continued to drink. The defendant returned to the Black Lantern later that evening and remained there until closing time.

Soon after the Black Lantern closed and its patrons departed, numerous fights broke out on an adjacent street. In one incident, an individual hit the defendant in the face and kicked him repeatedly. According to witnesses, the defendant subsequently became embroiled in a scuffle with James Shea and James McKone. This altercation ended abruptly when a gunshot was fired, killing Shea and wounding McKone. Several witnesses identified the defendant as the person holding the gun immediately after it discharged."

*Id.* at 44, 441 A.2d at 729–30.

■■ While both the State and Federal Constitutions guarantee a criminal defendant the right to effective assistance of counsel, *State v. Staples*, 121 N.H. 959, 961, 437 A.2d 266, 267 (1981); *see* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV, the State and federal standards are identical. *Abbott v. Potter*, 125 N.H. 257, 260, 480 A.2d 118, 119 (1984). Therefore, while we decide the State issue independently, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using federal precedent only for its help in dealing with the State issue, *see Michigan v. Long*, 103 S.Ct. 3469, 3476 (1983), the analysis and result is the same under each constitution.

■ "The constitutional standard by which we measure the performance of an attorney representing [a] client in a criminal case is 'reasonable competence.' " *State v. Labonville*, 126 N.H. 451, 454, 492 A.2d 1376, 1378 (1985); *State v. Guaraldi*, 124 N.H. 93, 98, 467 A.2d 233, 236 (1983). This standard was adopted by the United States Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052, 2064–65, *reh'g denied*, 104 S.Ct. 3562 (1984). Cognizant of that standard, we address the three major issues which comprise the substance of the defendant's ineffectiveness claim. We shall consider each issue separately.

First, the defendant challenges the effectiveness of the representation of his trial counsel herein on the ground that counsel should have preserved an insanity defense by more fully investigating the possibility that the defendant was a chronic alcoholic. He argues

that counsel's failure to do so denied him his constitutional rights. We disagree.

■■ This court has stated that chronic alcoholism may be considered a defense to criminal action, but that the defense is subject to the same rules and procedures as an insanity defense. *State v. Plummer*, 117 N.H. 320, 328, 374 A.2d 431, 436 (1977). The issue here, however, is not whether counsel followed the correct procedures, but rather whether counsel should have presented a defense based on that theory. Counsel testified at the hearing on the motion for new trial that his theory of defense was the existence of reasonable doubt, and that he questioned the defendant about his drinking habits "more than once." Counsel stated that he received the same response consistently; *i.e.*, that the defendant drank "socially" and had no drinking problem. Based on the information available to him at the time, counsel determined that pursuit of this defense would be ineffectual. The defendant now claims that his counsel should have realized, despite his negative replies, that the defendant had a chronic alcohol problem, severe enough to be considered a defense to criminal charges. Clearly, the record does not support this claim.

■ The defendant's second claim is that his right to effective assistance of counsel was denied because counsel's closing argument could be characterized as "an incoherent jumble." According to the record of the trial, however, counsel consistently maintained the position that the defendant never fired the shot that was fatal to the victim. In addition, counsel repeatedly argued his theory of the case; namely, that there was reasonable doubt about the guilt of the defendant. While we may agree that counsel's words to describe persons or events were not the most appropriate ones, *e.g.*, "this slob client of mine," this court does not agree that in this instance the use of such language amounts to ineffective assistance, or that it violates the defendant's constitutional rights.

■ Finally, the defendant claims that counsel provided ineffective assistance by failing to investigate and call witnesses at the sentencing hearing. The transcript indicates that it was a tactical decision on counsel's part not to call witnesses at the sentencing proceeding, and at the hearing counsel testified that he did not usually call witnesses at that stage of the case. While it is the responsibility of the attorney to investigate mitigating circumstances and present such factors to the sentencing court, *see* ABA STANDARDS FOR CRIMINAL JUSTICE § 4-8.1, tactical decisions on the attorney's part are clearly involved. We have held that we will not second guess tactical judgments of defense counsel. *State v. Perron*, 122 N.H. 941, 947, 454

A.2d 422, 425 (1982). Further, "success in criminal trials and perfection in trial tactics are not guaranteed by the Constitution." *State v. Fleury*, 111 N.H. 294, 299, 282 A.2d 873, 877 (1971). We hold, then, that counsel's tactical decisions did not amount to ineffective assistance.

In conclusion, this court has stated that "[r]eviewing courts start with the strong presumption that counsel's conduct falls within the limits of reasonable practice." *State v. Faragi*, 127 N.H. 1, 498 A.2d 723 (1985). The defendant, then, must overcome this presumption in order for us to hold that he was denied the effective assistance of counsel. He must also show that if counsel's competence falls below the objective standard, he was actually prejudiced and was, thus, entitled to a new trial. *Id.* at 7, 498 A.2d at 726; *Breest v. Perrin*, 125 N.H. 703, 706, 484 A.2d 1192, 1194–95 (1984). Since in this case the presumption has not been overcome, there is no need to address the issue of prejudice.

*Affirmed.*

SOUTER and JOHNSON, JJ., did not sit.